IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BRIGHTWELL, #272087          *
      Plaintiff
                                    *

v.                                 Civil Action No. DKC-05-2341
                                    *

RONALD HUTCHINSON, et al.,
      Defendants             *
                                  ******

## **MEMORANDUM**

Defendants have moved for dismissal or summary judgment against Plaintiff David Brightwell. Paper No. 31. Plaintiff has not filed a response.[1] The issues have been fully briefed and no hearing is necessary. Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the dispositive motion filed by defendants, treated as a motion for summary judgment, will be granted.

## **Background**

Plaintiff's Complaint focuses on events surrounding his October, 2003, transfer from the Maryland House of Correction in Jessup ("MHC") to the Maryland Correctional Institution in Hagerstown ("MCI-H") and events occurring while he was housed at MCI-H.

Plaintiff states that from 1998 to October 1, 2003, he was housed in a single cell at MHC. In 2000, he was assigned a job in the State Use Industries ("SUI") "tag shop." He retained this job until October 1, 2003, when for "no reason" he was transferred to MCI-H. Paper No. 1.

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on April 10, 2006, Plaintiff was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. Paper No. 32. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. *Id.*
     Plaintiff sought and was granted several extension of time within which to respond to the dispositive motion. Paper Nos. 33, 34, 35, 36, 37, 38, 39, 40, 45 and 45.

Upon transfer to MCI-H, Plaintiff was assigned to a double cell. Plaintiff refused the cell assignment after telling correctional officers that "he did not desire to be housed in double cell or dormitories." *Id*. Plaintiff was placed on administrative segregation and later found guilty of a rule infraction and placed on disciplinary segregation. *Id*. Plaintiff states that he received false infractions reports and that the administration at MCI-H "discriminated as to who should and would be in a single cell." *Id*.

On March 30, 2004, Plaintiff was called into the housing unit area office by Reverend Day and advised that his mother had died three days earlier. Plaintiff's request that he be allowed to call his family was denied. *Id*.

Plaintiff states that on April 20, 2004, he was assigned to Administrative Segregation and was approved to receive his personal property. Plaintiff states, however, that Captain Ridenour did not allow Plaintiff to receive his property. *Id*. Plaintiff claims that Captain Ridenour's actions were discriminatory. The following day Captain Ridenour forced Plaintiff to speak with Dr. Burkett, a psychiatrist, in the presence of two other correctional officers while handcuffed.

Plaintiff states that on April 22, 2004, Correctional Officer Berry, at the instruction of Correctional Officer Hasum, took Plaintiff's legal work, religious books, and personal mail. He next alleges that on or about July 18-21, 2004, Captain Ridenour threatened Plaintiff that, if he did not withdraw two complaints, he would be issued a new infraction and placed on disciplinary segregation. *Id.*

Plaintiff was approved for transfer to MHC in August, 2004. On August 13, 2004, while in the property room awaiting transfer back to MHC, Correctional Officer Jackson refused to pack Plaintiff's allowable property, consisting of legal materials, religious materials, hygiene and other

2

personal items, including a word processor. Plaintiff states that his property was never delivered to him after transfer, and his complaints regarding same were never answered. *Id.*

Upon his return to MHC, Plaintiff requested to no avail that he be placed back in his SUI tag shop job. *Id*. Plaintiff specifically states that the SUI tag shop manager, Mr. Satterfield, did not see that Plaintiff was reinstated to the tag shop because Plaintiff is Muslim and would leave work early on Fridays to prepare for Friday prayer services. *Id*.

Plaintiff seeks declaratory and injunctive relief, including: restoration of his good conduct credits; reinstatement to his job in the SUI tag shop and payment of back wages reflecting what he would have earned from the date of his transfer in October 2003; housing in a single cell; and return of his word processor. He also seeks compensatory and punitive damages.

**Standard of Review**

**A.     Motion to Dismiss**

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U. S. 69, 73 (1989) *(citing Conley v. Gibson*, 355 U. S. 41, 45-46 (1957)). "While §1983 complaints that recite bare legal conclusions that are 'wholly devoid of facts' or that are not supported by specific facts pleaded, may warrant dismissal, conclusory legal assertions that are supported by the pleaded facts - even if the factual assertions are equally consistent with a contrary conclusion - should survive a Rule 12(b)(6) motion to dismiss." *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989) (citations omitted). "In considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiffs, and its allegations taken as true."

3

*Finlator v. Powers,* 902 F.2d 1158, 1160 (4th Cir. 1990) (*citing Jenkins v. McKeithen*, 395 U. S. 411 (1969)).

**B.      Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Not every factual dispute will defeat the motion. As the Supreme Court has stated, [b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc*., 840 F.2d 236, 240 (4th Cir. 1988). The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1993), but it must also abide by its affirmative obligation to ensure that factually unsupported claims and defenses to not proceed to trial. *See Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23 (1986)).

**Analysis**

**A.      Exhaustion:**

The court first examines Defendants' contention that portions of this claim should be dismissed due to Plaintiff's failure to exhaust available administrative remedies.  The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision plainly extends to Plaintiff's allegations, and his claims must be dismissed, unless he has satisfied the administrative exhaustion requirement under the PLRA or Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement compels a prisoner to comply with prison grievance procedures. *Jones v. Bock,* 127 S.Ct. 910, 923 (2007).  A prisoner must pursue a grievance until he receives a final denial of the claims, appealing through all available stages in the administrative process. *See Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md. 1997) (dismissing a lawsuit for failure to exhaust, where a federal prisoner did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief");

5

*Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. If this request is denied, a prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office. *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Defendants contend that Plaintiff did not fully pursue administrative remedies regarding his claims concerning denial of certain items of property, denial of telephone call to his family following his mother's death, and problems he encountered after his return to MHC-J. Paper No. 31, Exs. 1 and 2. [2]

The uncontroverted evidence shows that Plaintiff has filed eight cases with the Inmate Grievance Office ("IGO"). IGO Number 20001251 was filed in 2000 and involved a property issue. This IGO case predates the issues pending before the court. IGO Numbers 20040510, 20040645, 20040984, and 20040985 each involved Plaintiff's single cell status. *Id.*, Ex. 1. Each case was administratively dismissed without a hearing and there is no evidence that Plaintiff filed a petition

---

[2] There is no "total exhaustion" rule for § 1983 claims. Rather, unexhausted claims are not considered, while exhausted claims proceed. *Jones v. Bock*, 127 S.Ct. at 923-24.

for judicial review. *Id*. The remaining IGO cases filed by Plaintiff as detailed by Defendants did not involve any of the facts complained of by Plaintiff. *Id*.

Plaintiff clearly has failed to exhaust available administrative remedies with regard to allegations that he was denied certain items of property, denied an opportunity to make a telephone call to his family following his mother's death, forced to meet with a psychiatrist, and faced various problems after his return to MHC, including not being reinstated to his previously held prison job. Unlike the prisoner plaintiff in *Taylor v. Barnett*, 105 F.Supp. 483, 486 (E.D. Va. 2000), prison officials do not appear to have frustrated plaintiff's attempts at exhaustion; instead, Plaintiff through his own actions failed to file the appropriate appeals.

**B.     Supervisory Liability**

Plaintiff has alleged no personal involvement by Wardens Hutchinson, Sacchett, Williams and Sowers, or Assistant Warden Koppel and SUI Regional Manager Bickford. Rather, Plaintiff contends in his complaint that these individuals are properly named because they exercise supervisory authority over other named Defendants.[3] Paper No. 1.

In order for supervisory liability to exist in a §1983 action it must be established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

---

[3] Such liability would be premised on the legal doctrine of respondent superior. The doctrine of *respondeat superior* does not apply to actions under 42 U.S.C. §1983. *See Monell v. New York Dept. of Social Services,* 436 U.S. 658, 691 (1978).

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

To the extent Plaintiff is claiming that these officials were indifferent to actions taken by staff, he has failed to state a claim. Deliberate indifference is more than negligence. As one court explained:

> Generally, a failure to supervise gives rise to a §1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel. A single act or isolated incident are normally insufficient to establish supervisory inaction upon which to predicate §1983 liability.

*Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (citations and footnote omitted).

Plaintiff has not pointed to any specific action or inaction on the part of Defendants Hutchinson, Koppel, Sacchett, Williams, Sowers, and Bickford that in any way contributed to his injuries. He has not alleged facts from which it could be inferred that they were aware his constitutional rights were being violated or that they failed to take corrective action. There is no basis for liability on the part of these defendants.

**C.     Transfer from MHC to MCI-H**

Plaintiff claims that his transfer from MHC to MCI-H was unjustified and cost him a job and preferred housing. Paper No. 1. In order to state a claim for denial of due process under the Fourteenth Amendment, Plaintiff must allege that a constitutionally protected life, liberty or property interest was at stake. The Constitution itself does not give prisoners a protected liberty interest in being classified to a particular prison, security level, or job. *See Meachum v. Fano*, 427 U. S. 215, 224 (1976) ("The Constitution does not require that the State have more than one prison for

8

convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution.")

While a state can create a constitutionally protected liberty interest, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relations to the ordinary incidents of prison life." *Sandin v. Conner*, 515, U.S. 472, 484 (1995). Being denied housing in a particular prison or placement in favorable prison programs are simply not atypical or significant hardships in ordinary prison life.[4] *Id.* Likewise, prisoners do not have a constitutionally protected right to work while incarcerated or to remain in a particular job once assigned. *See Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978). Because Plaintiff does not have constitutionally protected liberty interests at stake regarding job or housing assignments, he has no entitlement to due process in connection with any of the deprivations alleged regarding his transfer from MHC to MCI.

To the extent Plaintiff's complaint can be construed as stating an Eighth Amendment claim because he was not given single cell status while housed at MCI, his claim also fails. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions

---

[4] It is clear from the record before the court that Plaintiff received numerous infractions due to his refusing to be housed in a double cell. Plaintiff does not claim that his right to due process was violated during the resulting adjustment proceedings, nor does he state that he was required to be given single cell status due to any medical, psychological, or specific safety concerns, i.e. protective custody status. Rather, Plaintiff makes vague and conclusory allegations that "false" infractions were filed against him. Conclusory statements are insufficient to survive a motion to dismiss.

9

which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297(1991) (quotations omitted). Specifically, prison officials have to consciously disregard a substantial risk of serious harm to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993). Moreover, "on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Plaintiff's Complaint does not allege facts sufficient to state a cause of action based on unduly harsh conditions of confinement. He does not suggest that prison officials acted with "deliberate indifference" to his health and safety. Rather, he simply states that while incarcerated at MHC he was housed in a single cell and that upon his transfer he expressed a preference for single cell housing, based on his knowledge that double celling and dormitory celling could lead to violence and other trouble for an innocent bystander. Plaintiff has pointed to no facts which would indicate that he required a single cell due to medical, psychological, or safety concerns. Rather, he

sought a single cell based on his own preference for same.  The denial of his request does not rise to an Eighth Amendment violation.

**D.     Loss of Property**

Plaintiff's claims that the property officer at MCI-H improperly refused to pack allowable property for his transfer and that his word processor was lost or destroyed do not state a constitutional claim. In the case of lost or stolen property, sufficient due process is afforded a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy.[5] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[6]

Plaintiff's claim regarding confiscation of his legal material bears upon his constitutional right of access to the courts. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). While prisoners have a constitutionally protected right of access to the courts,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S.343, 355, (1996). To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Id.*, at 351.  Prisoners are entitled to "a reasonably adequate opportunity to present claimed

---

[5]Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[6]Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable but only where the prisoner is able to demonstrate actual injury from such deprivation. *See Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 354. Rather, the *Lewis* Court concluded that *Bounds* stood essentially for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but must have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*; *see also O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (inmate must demonstrate that inability to gain access to legal materials resulted in "actual injury" to his "capacity of bringing contemplated challenges to sentences or conditions of confinement before the courts").

Plaintiff has shown no actual injury or specific harm suffered as a result of the alleged confiscation of his legal materials. Without greater specificity, Plaintiff's claim fails.

### Conclusion

For the foregoing reasons, Defendants' Motions To Dismiss and in the Alternative for Summary Judgment shall be granted. A separate Order follows.

  February 12, 2007                              /s/
                                       DEBORAH K. CHASANOW
                                       United States District Judge

13